The last case on the calendar for argument this morning is Toma N. Ray Toma. It's a mandamus. It's a long name. Yeah. Mr. Dangerfield, you're up first. Yes. Thank you, Your Honor. My name is Mark Dangerfield. May it please the Court. I'm here representing the Arizona Senate President, Warren Peterson, and the Speaker of the Arizona House, Ben Toma. You can save us a bunch of questions, I think, because we all have the same one. If you can give us a brief summary of where the proceedings below now stand. Yes, I'd be happy to do that. So we expect that the trial testimony will be concluded today. This is a court trial, is it not? This is a trial to the court, yes. The actual case won't be resolved for some months. We anticipate or the judge has advised the parties that she'll ask for proposed findings of fact and conclusions of law due in, like, mid-December, and then that once she received those, she would take it under advisement. She hopes to rule, she said, by March to enable the so that the voting laws are approved, they can go into effect for the primaries in the 2024 election. And I just have one other question. Have either of your clients testified at this trial? No. Have they submitted briefing? They have. On the merits of the, not with respect to this privilege claim, but with respect to anything else? You know, I'm trying to think. We can check. I'm not sure if they have or not. We can check the record. Let me, if I could follow up with a procedural question. I take it because it's a bench trial, we don't have to worry about the jury disappearing or the jury dropping off. So the district court could keep this record open in a sense, where if we were to, I just want to make sure whatever ruling we make in this case, let's say it's a ruling in your favor. Because it's a bench trial, I take it the district court, you could reopen the case essentially. Sure. As opposed to with a jury, then that would be a complete mess. Yes. Okay. So one last question on that, and I'm going to ask your friend the same question. I know because this is a mandamus and there's an ongoing trial, everybody wants a prompt ruling. But if we don't rule by 5 o'clock tonight, the issue will not be moved, I take it. I think that's correct, Your Honor. Okay. Now, I'm sorry, I diverted you. So go back and start where you wanted to start. All right. With that in mind, we're here today because the district court issued an order allowing the legislators' depositions because, she said, and I'm quoting now, they have waived the legislative privilege as to information about their motives for the voting laws. That's the only waiver she found, as to information about their motives for the voting laws. Now, this court and many other courts have found, have always found, that it's improper to take testimony from individual legislators to determine the motives of the legislature. Let me make your job easier because I don't think anybody contests that you couldn't just go out and depose a legislator about his or her motives. The privilege would apply. And I don't even think you could sue them and make them defendants and do that. The privilege would apply. This is a different case. This is a different case where your clients affirmatively chose, even though the state was being, as close as I can tell, ably represented by other lawyers, to intervene in the case and then to answer the complaint by denying the allegation that their motives were improper. So, focus on the waiver issue for me. I think we all understand that the privilege would otherwise protect them, but why isn't that voluntary entry into the case an assertion that their motives were good, sufficient to waive the privilege? It's not a waiver because they didn't assert that their personal motives were good. What they asserted was simply that the legislature itself had no motives for it. But if they had information to the contrary, so let me give you a hypothetical. They denied the part of the complaint that says the motives of the legislature are no good. Both of these individuals know that other legislators, this is hypothetical, have told them that our motives are terrible. We're doing this to keep Hispanic Americans from voting or we're doing this to keep African Americans from voting. So they have information relevant to the motive issue. They can't be deposed about that? No, Your Honor, because as this court held in or said in the, I think this was said in the city of Los Angeles v. Lee, or Lee versus the city of Los Angeles, the stray comments of individual legislators can't be attributed to the legislature. In fact, the court said it's almost certain that it's the opposite. So maybe I gave you a bad hypothetical. Maybe in the caucus somebody said, we should do this in order to deny African Americans their right to vote, and everybody raised their hand and said, I'm in. The issue isn't the relevance right now because we wouldn't grant a mandamus simply because a judge had issued an overbroad discovery order. My question is, why can't the judge on these facts say there's at least enough to take your deposition to see what information you have? Because you've put, you've denied that there was a bad motive, and you may have information about that. Well, this court's analysis in the Biddeker case kind of goes to that. And in Biddeker, in a non-bank decision, the court was not dealing with legislative privilege, to be clear, it was dealing with lawyer privilege, attorney-client privilege. But it said that what it called the fairness principle is what you have to look at, and by that the court meant that you have to look at what information that the party needs to defend itself relating to these claims. In other words, what difference did it make to the plaintiffs that our clients intervened and asserted or denied their assertion that there was improper motives here? And so that's the question the court has to ask. What information is vital to the plaintiff's defense or the plaintiff's argument that these laws are improper? So is it your position that it is the importance of the information that bears on the issue of waiver? In other words, I understand the argument that the importance of information may well bear on the over breadth of a discovery request under Rule 26 or one of the specific discovery rules, but I'm having a hard time tying the importance of the information to whether or not your clients waived their privilege by voluntarily entering the case and denying the bad motives of the legislature. Well, I don't know that it's the importance of the information, Your Honor. The question is what was different in the plaintiff's burden to prove these laws were unconstitutional because of invidious motives? What changed? Did their burden increase upon the intervention of my clients? And the answer to that, I think, is no. If they needed our clients' views about the legislative motives, they could have subpoenaed them. They could have named them. My concern with that is you may well be right on that. The judge may have issued an over broad discovery order, but that's not why we're here. We're here because the judge found that your clients waived the privilege. And if you were only up here arguing about an over broad discovery order, this would be easy. We would say, we don't grant mandamuses for that. You're up here because there's a serious argument about waiver. So I'm still having a hard time connecting the importance or lack of importance of whatever information your clients have with the question of whether or not by voluntarily showing up and denying the legislature's bad motive, they haven't waived any legislative privilege. Because it didn't increase. There was nothing vital to the plaintiff's prosecution of these laws that changed by reason of our client's intervention. And the reason that it didn't change is because our clients are not testifying. They are not subpoenaing depositions. They have, in fact, responded to discovery. But they're not offering any testimony. At the time Judge Bolton issued this order, as I read it, your position was our clients don't plan on testifying, but that might change, correct? That was initially what they said. Yes, and that was at the time the judge issued the order. Yeah, I'm not positive about the timing, but in any event they haven't offered testimony and they won't. But at the time nobody was willing to assure the judge that your clients were just there as a matter of formality. I think they did say that the reason they were intervening was to present their view of the case because there was a specific reason they intervened, and that was because of a change in the leadership in the state. When this case was filed, we had a Republican governor, Republican Attorney General, you know all about that. From what little I can tell from looking at this case, your client's side of the case has been ably represented, but that's a separate issue. That's not the argument, but when the Attorney General came in, she notified us, she notified the parties, that she was not going to support certain aspects of the voting laws. And with that, our clients decided they needed to intervene, not specifically because of the issue she said she wasn't going to support, but to ensure that the court would get a full view of the perspectives of the legislator, and most importantly to ensure that if there were an appeal, that they would be able to ensure there was an appeal of an adverse decision because, as you know, the statute allows them to simply say, oh, we're going to intervene, but all we're going to do is file briefs. Or just we'll intervene as amicus. Or just amicus. But they made the decision to intervene as parties defendant. And they filed the answer counsel, and like I said, that's the thing I'm concerned about, is they actually made factual assertions in the answer. Well, they just denied. All they did was deny. But that's saying that something that's being alleged is not true, as a matter of fact. Yeah, but they're not saying that all they're denying is that the legislature had invidious motives. And there's no reason why that should allow the plaintiffs to then find out the motives of the individual legislators. Let me jump in. That's a relevance argument. Has that relevance argument ever been made to the district court in this case? Yes, that relevance argument. When was that made? When we first, well, back in July of this year, when the parties had their meet and confer about these issues, they exchanged letters stating their position, and we submitted a letter which specifically said, we don't think these things are relevant. But has the district court ever ruled on that? The district court didn't rule on the relevance. So I guess that's one of my concerns. But this court, sorry. But normally with mandamus we're saying, hey, the district court did something so crazy that we've got to jump in and stop it. Here, I understand your argument on privilege, but there's privilege and there's relevance. So it seems like sometimes we're kind of blurring the two. As to relevance, has the district court said, you know what, I've looked at this and I disagree with you, counsel. The individual motives are wholly relevant to this litigation. Has the district court said that? I don't think so in those words. I mean, all she said in her order was as I just said. Privilege was waived. As to the individual motives of the legislators. But privilege and relevance are different things. Right. But just two points, Your Honor. The motion panel that entered the stay here specifically directed the parties to brief relevance, whether these were relevant. Well, it also said nothing we say will bond. I mean, perhaps if there had been a different motions panel, we would have asked people to brief different things. Perhaps. So I'm not blaming you for briefing it or arguing it. We're just trying to figure out why, whatever the motives of the motion panel is, relevance is an issue that should be really before us in an extraordinary mandamus petition. I mean, you can raise a relevance objection in a deposition. You can raise it in response to interrogatories. You can get a ruling from the judge on it by going to the judge and asking for a ruling. And so we don't have any of that in this case. Well, I mean, we then, once the court ruled, and just to give you the background, there were simultaneous briefs presented to the district court on which she ruled. So nobody had a chance to respond to the other's party brief. Once she ruled, we then filed a motion for stay with the district court, which did discuss specifically relevance and argued that in light of this court's decision, and Foley and many other cases, it was completely improper to order the depositions of individual legislators. Neither the Supreme Court or any courts of appeal, Your Honors, has ever allowed the depositions or the testimony of individual legislators to find out what their motives were. The courts have consistently. But, counsel, those cases did not involve legislators who were parties to the action, though. No, I don't think that's true, Your Honor. But what case involved a legislator that was a party to the action and discovery was disallowed? What case do you have? Well, the Lee versus the city of Las Vegas v. Foley case that I've been talking about involved legislators. The city was the party. Right. Right, the legislators were not parties. Well, not individually, I suppose that's right. Correct. Counsel, I know you can see it in your time, but to me this case rises and falls on whether or not your clients can satisfy the Bowman factors. Could you briefly go through each of those factors and tell me why each of those factors weighs in favor of us granting the petition, in favor of your clients? Yes, I can, but I'm going to have to jog my memory briefly here. There's five factors, and we argued in the brief that all of them but one applied, as I recall. Okay, let's go through the first one. You said that they have no adequate means to attain relief. Correct. What about the option of defying the discovery order, which the Supreme Court has recognized as an option? I'm sorry, I didn't quite catch the question, Judge. What about the option of not complying with the order, which the Supreme Court in Mohawk Industries has recognized as an option? Well, that would require the legislatures to fall under a contempt order or a sanction, and if that were the case, that is not something this court has required. It didn't require it in the Foley case. It didn't require it in the Lee v. City of Los Angeles case. The Supreme Court, if they were to do that, this case wouldn't be resolved until long after the record was done, until long after the decision had been made, because that would be a normal appeal. But, counsel, we have a Supreme Court decision that says that's an option, which would give you a means to attain relief. Well, Your Honor, with respect, that was dealing with an attorney-client privilege, and the Ninth Circuit has never adopted that. In the Foley case, it didn't say, we're not going to issue mandamus because you can just go refuse to obey the order. No, they didn't do that. Counsel, let's go to number three, which you cannot get a real mandamus unless you can show clear error in the district court's decision. So how does this factor weigh in your favor in terms of the issuance of a writ? What is the clear error in this case? The clear error is that no court, including this court, has ever allowed discovery or depositions from individual legislators as to their individual motives. That's not correct. You attempt to distinguish the Third Circuit case by saying it's not a waiver case, it's a scope of the privilege case. Maybe that distinction works, but you can't say no court has ever allowed that discovery. The Third Circuit expressly allowed discovery. You're talking about the In re North Carolina case? No, the Third Circuit case, the Norris case. Expressly allowed discovery. That's the case the district court relied on. So if there's a case... Oh, the Powell case, excuse me. With apologies to Judge Rawlinson, because I think she's put her finger on something that I wanted to ask you. How can we say this order is clear error when there is at least one other court of appeals in similar circumstances, you might be able to distinguish them a little bit, who says the privilege doesn't apply? And isn't that the most important of the five Bauman factors? Well, yes, in terms of clear error, that is the most important. I guess if we're not convinced that there's clear error here, which is not just that the judge is wrong, but it's just really terribly, terribly wrong, don't we have to deny the mandamus? Yes, but the Powell case is completely different, Your Honor, with respect. In the Powell case, the court didn't assess waiver. It said the privilege you're seeking doesn't exist. The reason I raised it was because you said no court has ever told legislators they had to testify about that, and the Third Circuit did tell them they had to testify. You might well say there was no privilege in that case, but you can't say no court has ever told legislators they must testify. Well, maybe there are two different sides of the coin here, Your Honor, but actually the Third Circuit in the Powell case simply denied jurisdiction of the argument. Right, leaving an order in place, that required what? Leaving an order in place, I suppose, but all we know is they declined jurisdiction. So maybe, I mean, I don't want to argue that. We've taken you over. I wanted to make sure Judge Rawlinson had finished asking her question. Well, I just had one other question. Is there any precedent in this circuit resolving the issue of whether petitioners' voluntary involvement in the plaintiff's action resulted in a waiver of their legislative privilege? Is there any case in the Ninth Circuit that resolves that issue one way or the other? As far as we've been able to find, no. The answer is no. And not only in this circuit, there's no case we can find in any circuit that addresses that question. Well, then doesn't that mean that because there is no precedent that will require the court to rule one way or the other, its decision is not clearly erroneous? Well, if there's an issue of, I mean, there's, no, it doesn't require, because you have to look, if you look at the test in Bidiker as to how you evaluate a waiver, and if you look at the long line of Supreme Court cases and this circuit cases rejecting the use of individual legislators' motives, those two factors together show that this order is contrary to anything. But that's not, those cases did not address the precise issue that the district court ruled on in this case. Yeah, I don't think that any court has ever addressed the precise issue that we're here to discuss today. That's the point. The point is, if no court has ever addressed this precise issue, then how can the court's order be clearly erroneous? The court order can be clearly erroneous because of the principles enunciated in other cases, such as the Bidiker case on how to evaluate a waiver, such as the Foley case that says courts do not order the depositions or testimony from individual legislators on motives. That's how the court can arrive at that conclusion. This is my final question. I'm sorry I'm taking you so far with your time. Are you familiar with our precedent, N. Ray Morgan, 506 F3rd 75? N. Ray Morgan? Correct. No, I don't think I am. If I tell you that in that case, we held that if no prior 9th Circuit authority prohibits the courts taken by the district court, this ruling is not clearly erroneous, what would that do to your argument? Well, obviously I'm not familiar with the case, and it hasn't been argued, so you're kind of catching me by surprise. Thank you, counsel. Sorry. Counsel, we've taken you over, but we thank you for your patience. Okay, thank you. We're going to hear from the Real Parties of Interest respondents. Mr. Volchok. Good morning, Your Honors. Daniel Volchok for the Real Parties of Interest. Your Honors, I will start where the court started with Mr. Dangerfield on the question of timing. One small correction, trial is expected to continue at least through tomorrow and perhaps into next week. But, Judge Owens, to your question about mootness, no. When trial concludes, that will not render our discovery request moot. As the court indicated, this is a bench trial, and we actually had a colloquy with Judge Bolton about this yesterday when we told her we are concluding our case, but we said, can you please hold the record open in light of this hearing today and the possibility of a ruling from the 9th Circuit? And she said, well, I can hold it open for a few days. I can't hold it open forever because, as was discussed with Mr. Dangerfield, time is of the essence here. The first elections in Arizona are in March. The election officials there need to know in advance of those elections how the challenge laws are going to apply, and voters need to know and political parties, et cetera. So I would reiterate the request that we made in our mandamus opposition, which is that if the court agrees with us, agrees with Judge Bolton, that it lift the stay immediately. Today, tomorrow, court can issue a one-line order saying, mandamus denied, stay lifted. I don't think the court needs to do any more, but if it wants to offer a more fulsome opinion, of course it can do so in due course. It can still lift the stay and deny the mandamus petition tomorrow, but I submit Judge Bolton should have before her all of the relevant information in deciding the important issues in this case. So let me just ask you one other question, and you're not in front of Judge Bolton now, so unless she looks at the video, it may not mind you, but do you intend to depose these two interveners? If the stay is lifted, that is our intention, yes. And I want to go back to an exchange that the court had with Mr. Dangerfield about what role exactly the legislators have played. The court referred to the fact that they have intervened, and that makes this different from basically every case they have. Well, they not only intervened, they answered. And they answered and denied. They didn't say, well, we're not going to file an answer because we're only intervening to defend on the legal issues. They filed an answer making a denial. What else have they done, in your view? Judge Hurwitz, you are absolutely correct. They have done that. So they have acted like all of the other defendants. And let me get specific. They have attended the depositions, and they have objected to our questioning of witnesses. They have sat at defense counsel table for every minute of trial, and they haven't just sat there quietly. They have cross-examined witnesses. They have objected to our questions to witnesses. They have paid half the fee for an expert who submitted a report in paragraph 14 to Judge Bolton that posited benign motivations the legislator might have had for what it did here. That expert sat in court yesterday. I was there with him. Turned to Judge Bolton and said, and this court can get a hold of the transcript. We already have it. I have not seen indications of discriminatory intent by the legislature. That's very close to a quote. It might not be an exact quote. But they have done that. I do not understand a regime. It is not civil litigation as I recognize it for a party to be able to intervene, take positions, affirmative positions like that on key disputed issues, but then turn around and block us from exploring those assertions in discovery. And to get to another point the court was discussing with Mr. Dangerfield, they have not cited any case that supports the position that they can do that, that a party can intervene, take positions on contested factual issues, but then block discovery into those positions. And that, yes, by itself precludes mandamus here. This may be the most important thing I say in my time up here. You cannot get what the Supreme Court has called the quote, unquote, really extraordinary relief of mandamus when you cannot cite one case that supports your position. Period. End of story. The court was discussing with Mr. Dangerfield, Powell versus Ridge. Yes, the Third Circuit is a case just like this one. They try to distinguish it, again, on the theory that they have had a relatively limited role and on the fact that the court framed it as the privilege not existing rather than the privilege having been waived. But the point is either way, no matter how you frame it, the Third Circuit said legislatures cannot do what the petitioners here are asking to do. Judge Rawlinson also asked about the first Bowman factor. It also goes to the second Bowman factor. Those two essentially are do you have an adequate alternative. Do they really have an adequate alternative? I know the Supreme Court has said, well, you can have yourself held in contempt. And knowing how good the district judge is in this case, I'm sure she wouldn't put anybody in jail and she would stay a contempt order pending appeal. But is it really an adequate alternative? Yes, and I want to be clear, Judge Hurwitz, it is not just the Supreme Court that has said this. In the Mohawk case, United States versus Ryan Kobeldick and others, Mr. Dangerfield said this court has not said it. This court has said it in the case that we cite in our opposition, Newton versus NBC. Now the petitioners say in a response, in a footnote in their reply, well, Newton was not about mandamus. Well, that's true. It was about collateral order jurisdiction. But so what? Collateral order jurisdiction has a requirement just like the requirement under mandamus that you have an adequate alternative means of relief in the collateral order context. It's phrased as the order sought to be challenged is otherwise effectively unreviewable. And this court said in the face of a request that the court carve out from that general rule an exception for those asserting government privilege, so very similar to legislative privilege. The court said, no, you can disobey the order, incur sanctions and contempt, and if there are any, then you can appeal the ruling. And petitioners on page two of their reply brief, they say that this argument is, quote, unquote, contrary to common sense. Well, okay, if they want to tell the Supreme Court that its decisions don't make sense, they are free to do that, but this court does not decline to follow a Supreme Court precedent because a litigant thinks Supreme Court precedent doesn't make sense. In any event, it does make sense. Can I ask you a question about the scope of the privilege, which is one of the issues the motions panel asked you to address? Is your discovery aimed at the personal motives of Thoma and Peterson or the personal motives of the legislature writ large? Judge Hurwitz, thank you. This is exactly where I was going. So the petitioners say they go there. I will go right there. The answer is no. We are not seeking information about the personal motives of any legislature. That is what the petitioners have argued pervasively, but please look at the discovery requests. Four interrogatories, four document requests, nine possible deposition topics. Not one of them, not one, is about personal motives. It is about the motivations of the legislature, and that is the difference. Now, what they say in their reply, they say, well, Judge Bolton's order referred several times to individual legislators' personal motives. This court has said dozens and dozens of times that it reviews judgments, not statements and opinions. Here it's an order. What Judge Bolton ordered was that the legislators answer our document requests, they had already answered the interrogatories, and sit for depositions. And as I said, the deposition topics are not about personal motivations. So all of the cases that they cite, Foley, the other cases that are about individual motivation, they're in apposite here because this case is not about personal motivations. That's an argument that doesn't go to waiver, but as to whether or not the privilege actually would protect them even if not waived. Correct. They have two independent arguments. As Judge Owens was indicating in the topside argument, sometimes we are blurring them. But they are alleging essentially two clear errors. Number one is this error in finding waiver of the privilege, and number two they say whether or not we waive the privilege, the information that petitioners, excuse me, the real parties in interest are seeking is irrelevant. You seem to be raising a third question. That's why I'm asking. I hope not. Well, I think you are. What you're saying is the privilege doesn't extend, even if not waived to information that doesn't relate to the opponent's personal motives. I don't mean to say that, Judge Hurwitz. Our position is that they have waived privilege as to what the legislature's, the entire legislature's motivation, purpose, et cetera, was in passing the challenge laws. And obviously that is relevant because we have an equal protection claim. Petitioners agree on page 23 of the petition that one element of such a claim. I don't want to waste a lot of your time on it, but it interested me. So let's assume it didn't happen here. I know it didn't happen here. The Ku Klux Klan had sent a letter to the President of the Senate that said, please adopt this because this will make sure that only white people get to vote. Would legislative privilege cover that communication? I don't know the answer to that question, Judge Hurwitz. I wonder whether some of the stuff you're seeking to discover, but you're not going there so I won't either, may not be covered by the privilege at all. Okay. We have not made that argument, so I don't want to make it for the first time in oral argument in the Court of Appeals. What we have argued is everything that we are seeking, to the extent it is covered by privilege, and, again, we have not argued otherwise, the privilege has been waived by them intervening and so on and so forth. Mr. Dangerfield asked, well, what does it matter? Well, when they dispute factual issues, when they put in their side of the story, that is obviously evidence on which the district judge could rely in rejecting our claims. And more specifically, they are going to come into court, no doubt, and say, here are some possible benign motives. Plaintiffs did not disprove those motives, and it was their burden, and so we win. The way we disprove those motives is in discovery with exactly the type of document requests we submitted and the interrogatories that we posed. It is all relevant. None of it, it is certainly not clear error for the district judge to have held waiver under these circumstances when no case holds the opposite. Again, independently, they have an adequate alternative means, and so there are numerous bases on which mandamus should be denied. And, again, I will conclude and ask that the court lift the stay immediately. And a quick question for you, counsel. You would agree that the district court has not ruled on relevance yet, correct? That is correct because, I'm sorry, thank you for the opportunity to correct the record here, Judge Owens. Maybe I'm not correcting the record. The relevance argument has no merit, as we argue, but we also argue correctly that it was thoroughly waived below and, therefore, cannot support mandamus. They did not argue to Judge Bolton that the information we are seeking is irrelevant until after she issued the challenged order when they sought a stay of that order. So even then, they weren't seeking reconsideration of that order. They were telling Judge Bolton, hey, we're going to get you reversed on appeal, the likelihood of success, with this argument that we waived. And, by the way, we argued in our opposition to the stay motion that it was waived, and in their reply they didn't even answer that. Now they actually haven't. They may have waived it for purposes of this mandamus proceeding, but surely if you take a deposition and ask a wholly irrelevant question, they're entitled to object to it and go to Judge Bolton and ask for relief, are they not? Yes, Judge Owens. My waiver argument is limited to this mandamus petition. And what they say, my last point, what they say in their reply on mandamus in response to the waiver argument, what do they point to? A letter that they sent to us, which Mr. Dangerfield referred to, that obviously doesn't raise the issue with Judge Bolton, and they point to their argument to Judge Bolton that there are better sources of legislative intent than what we were seeking. That is not an argument that what we were seeking is irrelevant. To the contrary, if you say, well, there's something better, this is good, but there's something better, I submit it's a concession. Your Honors, unless the Court has additional questions, we'll ask the petition be denied and the stay be lifted immediately. Before you sit down, let me make sure Judge Rawlinson doesn't have any questions for you. No, I don't. If not, this case will be submitted. Thank you, Your Honors. We thank both sides for their arguments and particularly for getting here in a hurry on a mandamus, and we will attempt to rule very promptly. With that, we are in recess until tomorrow. Thank you. All rise.
judges: RAWLINSON, HURWITZ, OWENS